2007 ME 38

**Nichole CATES**

v.

**William J. DONAHUE Sr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 16, 2006.

Decided: March 1, 2007.

Daniel L. Cummings, Norman, Hanson & DeTroy, LLC, Portland, for appellant.

Appellee did not file a brief.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Dissent: DANA, J.

ALEXANDER, J.

[¶ 1] William J. Donahue Sr. appeals from a judgment of the District Court (Biddeford, *Foster, J.*) granting a protection from harassment order[1] to Nichole Cates. Donahue contends that: (1) in a protection from harassment proceeding, he cannot be held personally responsible for actions by his employees or agents; and (2) there was insufficient evidence of harassment. We affirm the judgment.

## I. THE RECORD

[¶ 2] The protection from harassment hearing apparently was not recorded. Because no transcript could be created, Don-ahue and the court acted properly in implementing M.R.App. P. 5(d) to prepare a statement of the evidence in lieu of a transcript upon which we can evaluate the claims on appeal.[2] Donahue filed a statement of the evidence with separately numbered paragraphs indicating each relevant point about which he and Nichole Cates had testified. The court reviewed Donahue's statement of the evidence, made some modifications and additions to it based on its recollection of the proceedings, and approved the statement as modified to become the record of the proceedings pursuant to M.R.App. P. 5(d). The preparation of the statement of the evidence in lieu of a transcript reflected good practice by both Donahue and the District Court to create a record as authorized by M.R.App. P. 5(d).

## II. CASE HISTORY

[¶ 3] The court-approved record indicates the following: Donahue and his wife own a business called Five Star Auto Sales. He sought to repossess a vehicle being operated by Nichole Cates and her husband, even though rightful ownership of the vehicle may have been disputed. All of the actions relevant to these proceedings were taken by Five Star employees or a private investigator retained by Donahue to attempt to repossess the vehicle. Donahue personally took none of the actions that are the subject of this dispute.

[¶ 4] In one of a series of events that led to Cates filing the harassment action, a

---

1.  *See* 5 M.R.S. §§ 4651 to 4660–A (2006).

2.  Rule 5(d) of the Maine Rules of Appellate Procedure provides:

    **(d) Unavailable Transcript.** In the event a transcript of the evidence or proceedings at a hearing or trial cannot be prepared, appellant's counsel may prepare a statement of the evidence or proceedings from the best available means, including counsel's recollection, for use instead of a re-porter's transcript. This statement shall be served on appellee's counsel within 28 days after the filing of the notice of appeal. Appellee's counsel may serve objections or propose amendments thereto within 7 days after service. Thereupon the statement and any objections or proposed amendments *shall be submitted to the trial court for* settlement and approval and, as settled and approved, shall be included in the record on appeal.

Five Star employee called Cates at home, falsely representing himself to be an agent of Home Depot. The caller advised Cates that she could claim a $2500 prize if she appeared at Home Depot within half-an-hour. Cates called Home Depot and was advised that the call to her was a scam, and the statement about an available prize was false. Shortly thereafter, a truck with Five Star dealer plates drove slowly past Cates's home, turned into her driveway, pulled out, and drove off slowly.

[¶ 5] On two other occasions, Cates was followed by a Five Star vehicle as she drove around town. In one instance, the vehicle following Cates drove off after she entered a shopping center parking lot. On the other occasion, the vehicle following her drove off after she entered a police station parking lot. In a separate incident, Cates observed an individual walking in her driveway near her vehicle. Cates locked the vehicle using a remote control device, at which point the individual near the vehicle fled into nearby woods. Concerned about this conduct, Cates called the police who came to her home, took a report, and followed the tracks into the woods. Later that day, the same individual appeared in Cates's driveway and took the vehicle. The day after the repossession, a Five Star truck drove slowly past Cates's home. These events caused Cates to become sufficiently fearful that someone might attempt to break into her home that she had the locks changed and a security system installed.

[¶ 6] Based on these actions, Cates filed a protection from harassment complaint against Donahue. After a hearing at which Cates and Donahue appeared and testified, the court found that Cates had been harassed by Donahue and issued a protection from harassment order, barring Donahue from contacting or harassing Cates. Donahue then brought this appeal.

## III. LEGAL ANALYSIS

### A. Personal Responsibility of Donahue

[¶ 7] Donahue personally took none of the actions that led Cates to file her protection from harassment action. However, each of the actions at issue was taken by an employee of Donahue's or a private investigator acting on behalf of Donahue and Five Star. A person may be held responsible for actions taken by his employees or agents acting at his direction or on his behalf. *See Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189, 195 (discussing individual responsibility of corporate officers); *Page v. Boone's Transp., Ltd.*, 1998 ME 105, ¶ 5, 710 A.2d 256, 257 (discussing elements of agency); *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246–47 (Me.1995) (discussing apparent agency liability).

[¶ 8] The summary nature of the protection from harassment proceedings does not change this rule. The District Court could properly conclude that an individual who authorizes employees or agents to harass another individual may be equally responsible with the perpetrators of the harassment for any harassment.

### B. Sufficiency of the Evidence

[¶ 9] In evaluating a claim of insufficiency of the evidence to support a judgment, we view the evidence and inferences that may be drawn from the evidence from the perspective most favorable to the court's judgment. *Pratt v. Spaulding*, 2003 ME 56, ¶ 10, 822 A.2d 1183, 1186. This rule does not change when our review is based on a court-approved statement of the evidence rather than a transcript. *See Tsoulas v. Liberty Life Assurance Co. of Boston*, 454 F.3d 69, 75–76 (1st Cir.2006) (when parties have agreed to facts, and their dispute concerns inferences that might be drawn from those facts, the standard of review is clear error review).

■ [¶ 10] To support its conclusion that harassment had occurred, the court had to find that there were at least three instances of harassment. For purposes of this appeal, the relevant definition of harassment is provided in 5 M.R.S. § 4651(2)(A) (2006), which states:

2. **Harassment.** "Harassment" means:

A. Three or more acts of intimidation, confrontation, physical force or the threat of physical force directed against any person, family or business that are made with the intention of causing fear, intimidation or damage to property and that do in fact cause fear, intimidation or damage to property.

■ [¶ 11] Thus the evidence must support a finding that at least three actions taken on Donahue's behalf were taken with the intention of causing fear or intimidation and did in fact cause fear or intimidation. Subsection 2 of section 4651 further states that: "This definition does not include any act protected by law." However, even when an individual may have a legal right to do something, the manner in which a legal act is performed can constitute harassment. *See Patane v. Brown,* 2002 ME 47, ¶ 10, 792 A.2d 1086, 1089.[3]

[¶ 12] Based on the evidence, the District Court could find that Cates was intimidated and made fearful by Donahue's agents' actions. She testified to those impacts, stating that she had changed her locks and installed a security system out of fear. The closer question is whether there was sufficient evidence of Donahue's agents' intent or purpose to cause Cates fear or intimidation.

[¶ 13] This case presents the question of when conduct that may be protected by law, but is unwelcome in the eyes of the person against whom it is directed, crosses the line into the realm of unlawful harassment. *See* 5 M.R.S. § 4651(2)(A).

■ [¶ 14] The answer lies in the requirement that in harassment proceedings the plaintiff must prove that it was the defendant's "conscious object" to harass the plaintiff. *See State v. Hills,* 574 A.2d 1357, 1359 (Me.1990). Proving this element can be difficult because a defendant seldom admits that he or she intended to harass the plaintiff. Courts are thus left to analyze this element of a harassment claim based on reasonable inferences that can be drawn from circumstantial evidence. A court properly considers the relationship between each of the three or more separate acts complained of when conducting this analysis. *See id.*

[¶ 15] This is a close case because, apart from the deceptive telephone call and the drive-by after repossession had occurred, the acts complained of by Cates were consistent with Donahue's claim that it was his purpose to repossess Cates's Cadillac. Repossession was an act protected by law, assuming that Donahue was the rightful owner of the vehicle. However, the trial court was not bound to accept Donahue's assertion that his sole purpose was to repossess Cates's Cadillac. The court could have reasonably concluded that Donahue's initial act, a deceptive telephone call that was not protected by law, was performed with the conscious object to both intimidate Cates and cause her to drive her car

---

**3.** *See also* 11 M.R.S. § 9–1609(2)(b) (2006) (a secured party may only repossess collateral without judicial action if he does so without breaching the peace). Where the debtor protests, a breach of the peace generally follows if the secured party attempts to repossess. WILLIAM D. HAWKLAND ET AL., UNIFORM COMMERCIAL CODE SERIES, § 9–503:3, at 9–678 (1997);

*see also* Maine Fair Debt Collection Practices Act, 32 M.R.S. § 11013(2)(N) (2006) (prohibiting communication with a debtor by using "any business, company or organization name other than the true name of the debt collector's business, company or organization").

to Home Depot to make it more readily accessible for repossession. Based on this finding, the court could have inferred that the events that took place over the next three days, including the drive-by after the car was taken, were related to one another and performed with the same intent to harass. Although this may be a close case, the outcome reached by the trial court is supported by the reasonable inferences that can be drawn from the circumstantial evidence.

The entry is:

Judgment affirmed.

DANA, J., dissenting.

[¶ 16] I respectfully dissent.

[¶ 17] The law authorizes the peaceful repossession of an automobile when the debtor is behind in his payments. 32 M.R.S. § 11017(1) (2006); 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 34–8 at 384–86 (5th ed. 2002). In order to accomplish a peaceful repossession, it is usually necessary to locate the vehicle when the debtor is not behind the wheel. Although a fact-finder might conclude that the creditor here caused the spouse of the debtor to be intimidated and fearful, in my view, such a fact-finder could not conclude that that was the creditor's intent.