MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2020 ME 38
Docket:        Yor-19-240
Argued:        December 5, 2019
Decided:       March 31, 2020

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

TORALF H. STRAND

v.

SABRINA VELANDRY

MEAD, J.

[¶1]   Toralf H. Strand appeals from a judgment entered by the District Court (York, *Janelle, J.*) partitioning real property in Kittery held by Strand and Sabrina Velandry as tenants in common.  Strand primarily contends that because he contributed all of the money to purchase the property, the court erred in dividing the value of the property equally after crediting him with the amount that he spent for insurance, repairs, improvements, and real estate taxes.[1]  We affirm the judgment.

---

\* Although Justice Alexander participated in the appeal, he retired before this opinion was certified.

[1] Strand also contends that the judgment contains a mathematical error concerning the way in which the court applied the stipulated credit.  As explained *infra*, we disagree and affirm the court's methodology.

## I. BACKGROUND

[¶2]  We view the record in the light most favorable to the court's judgment, *Kelley v. McKee*, 2019 ME 155, ¶ 2, 218 A.3d 753, and review the court's factual findings for clear error, *Doe v. Plourde*, 2019 ME 109, ¶ 8, 211 A.3d 1153 (also stating that "we will not second-guess the trial court's credibility assessment of conflicting testimony" (quotation marks omitted)). The record supports the following findings of the trial court.

[¶3]  Strand and Velandry met in January 2013, became romantically involved, and eventually rented a house together.  In January 2014, intending to establish a family home, Strand signed a purchase and sale agreement solely in his name to buy a house in Kittery for $250,000.  Although Strand put up all of the money to buy the property, he included Velandry on the deed as a tenant in common.  Strand admitted at trial that no writing exists that demonstrates any intent on his part to condition Velandry's interest as a tenant in common on her financial contribution to the purchase price.

[¶4]  The house underwent renovations, both major and minor, while the parties lived there together.  Strand left the home in June 2017 when the parties' relationship broke down; after that, Velandry had exclusive possession of the house and made further repairs to it.  Only after their relationship became

strained and Strand needed an infusion of capital into his boat business did he ask Velandry for half of the purchase price of the house.

[¶5]  In January 2018, Strand filed a complaint for equitable partition of the property pursuant to 14 M.R.S. § 6051(7) (2018).[2]  *See Pew v. Sayler*, 2015 ME 120, ¶ 27, 123 A.3d 522.  The matter was tried in the District Court on April 2, 2019; Strand and Velandry were the only witnesses.  On April 29, 2019, the court entered a judgment first awarding Strand the stipulated amount that he spent on insurance, repairs, improvements, and real estate taxes, and then dividing the property's remaining appraised value equally between the parties.  The judgment gave Strand the option to buy out Velandry's interest within sixty days after entry of the judgment.  If he failed to do so, the property would be sold.  The court denied Strand's motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52, and he timely appealed. M.R. App. P. 2B(c).

## II.  DISCUSSION

### A.    Equal Division of the Property

[¶6]  Strand first contends that he was entitled to a greater share of the property because Velandry's interest as a tenant in common was conditioned

---

[2] The complaint set out three additional counts that are not at issue in this appeal.

4

on her agreement to pay him half of the property's purchase price, and that the court erred in finding that the Statute of Frauds barred this claim. The Statute of Frauds provides that "[n]o action shall be maintained . . . [u]pon any contract for the sale of lands . . . or of any interest in or concerning them . . . unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized." 33 M.R.S. § 51(4) (2018). Its purpose is "to prevent actions based on false claims." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 11, 956 A.2d 104.

[¶7] Here, Strand admitted that there was no writing memorializing Velandry's alleged promise to pay him $125,000 for her interest in the property. Rather, Strand asserts that the Statute of Frauds did not foreclose the court's consideration of his payment of the entire purchase price as an indicator of the parties' intent that Velandry be an equal contributor. He argues that the court erred by failing to consider this payment when it divided the property.

[¶8] We need not decide whether the Statute of Frauds bars Strand's claim as a matter of law because we have long held that "[t]enants in common . . . are presumed to own equal shares." *Bradford v. Dumond*, 675 A.2d 957, 961 (Me. 1996). Although "this presumption *may* be overcome by evidence, such as

evidence of unequal initial contributions, establishing an intention to have unequal shares," *id.* (emphasis added), Strand fails to overcome the presumption in this case because the trial court made a factual finding that "[Strand's] assertion that [Velandry's] tenancy in common status was conditioned on her paying 50% of the purchase price is simply not credible." That finding is supported by Velandry's testimony that there was no discussion of such a payment until Strand raised the subject a year after the closing. In making that finding, the trial court was entitled to credit Velandry's testimony and reject Strand's contrary testimony. *See Plourde*, 2019 ME 109, ¶ 8, 211 A.3d 1153.

[¶9] Additionally, the court supportably found that "[Strand] is well versed in finance and real estate" and thus "understands how to protect his interest in real estate transactions." The court noted that in this case Strand could have ensured that Velandry paid half of the purchase price by withholding the deed until she paid her share; obtaining a note and mortgage from her; or having her sign an IOU. Because Strand did not do any of those things, the court inferred that the lack of a writing stating that Velandry's interest was conditional was evidence of Strand's intent to give Velandry an unconditional interest in the property when he included her on the deed.

6

[¶10]  In sum, because the court found that Velandry did not promise to pay Strand $125,000 in return for her interest as a tenant in common, and because no writing or other evidence beyond Stand's initial contribution of the purchase price was admitted to indicate that Strand intended that Velandry's interest be so conditioned, the court did not err in applying the presumption of equal ownership and entering judgment accordingly.  *See Bradford*, 675 A.2d at 961.

B.      Disallowance of Claimed Credits and Set-Off

[¶11]  Strand next contends that the court clearly erred in concluding that (1) his claim to have invested 300 hours of labor in repairs and improvements to the home was not supported by sufficient evidence, and (2) Velandry's share would not be reduced by the value of her exclusive possession of the property because Strand failed to prove the home's fair market rental value.  Concerning Velandry's claimed expenditures for necessary repairs, the court, although recognizing that "repairs were done to halt the home's unsafe and wasting condition," found that it "simply [could not] determine . . . [the] time and expenses [that] were spent on such repairs."  As a result, beyond Strand's credit stipulated to by the parties, the court declined to award either party additional

credit or assess a set-off against Velandry to increase or reduce either party's share of the property.[3]

### 1. Strand's Labor

[¶12] Contrary to Strand's contention that the court should have awarded him a greater share based on the value of his labor, on this record the court's factual finding that he "could only provide the court with general and sometimes vague estimates of the time he spent making repairs and improvements" is not clearly erroneous. *See Plourde*, 2019 ME 109, ¶ 8, 211 A.3d 1153; *Bradford*, 675 A.2d at 961 ("The court's findings as to the value of each parties' contributions are findings of fact.").

### 2. Fair Market Rental Value

[¶13] Velandry had exclusive possession of the home after Strand moved out in June 2017. It is a "well-established proposition that an out-of-possession tenant must prove the reasonable rental value of the property to successfully claim compensation for a co-tenant's occupancy." *Wicks v. Conroy*, 2013 ME 84, ¶ 18, 77 A.3d 479.

---

[3] Strand also contends that the court erred in denying his motion to find that a mortgage for which Strand was responsible encumbered the property. We discern no clear error in the court's finding that "there is no proof of a mortgage or any of its terms" and do not discuss this issue further. *See Doe v. Plourde*, 2019 ME 109, ¶ 8, 211 A.3d 1153.

[¶14]    Strand testified, based on his Zillow search of comparable residences in Kittery, that a fair rental value of the property was $2,200 per month.  He contends that the court clearly erred in finding that he "failed to meet [his] burden [of proving fair rental value] as the rental prices he stated were for homes in good repair."  We disagree.  The court's finding was justified given its acceptance of Velandry's detailed testimony concerning the home's poor condition.  Further, when asked if the house could be rented in its current condition, Velandry said, "No, absolutely not."  *See Wicks*, 2013 ME 84, ¶ 15, 77 A.3d 479 (stating that property owners may give their opinion as to the fair market value of their property and that the owner's opinion is a sufficient basis for the court's determination of that issue).    Absent sufficient evidence concerning the property's fair market rental value in its present condition, the court did not err in finding that Velandry derived no net benefit from occupying the property.

C.    Application of the Proceeds of Sale

[¶15]  The court accepted the parties' stipulation that Strand was entitled to a credit of $41,566.97 for his payment of insurance, repairs, improvements, and real estate taxes.  Its judgment first awarded that amount to Strand and

then equally divided the remaining proceeds of the property's future sale (less associated costs) between the parties.

[¶16]  In her brief, and again at oral argument, Velandry stated that her share is too high because the court should have first divided the appraised value of the property equally and then subtracted Strand's full credit from her half share.  Not surprisingly, Strand, who did not raise this issue in his brief, agrees.  The parties thus jointly agree that the judgment should be modified.  We disagree because the court clearly intended as a net result that Strand receive $41,566.97 more than Velandry.  That is what the judgment accomplished.  Using the parties' method, Strand would receive $83,133.94 more than Velandry—exactly twice what the court intended.  The court's methodology effecting its judgment is not erroneous, and we therefore decline to disturb the judgment notwithstanding the parties' agreement that it should be modified on appeal.

The entry is:

Judgment affirmed.

Jens-Peter W. Bergen, Esq. (orally), Law Office of Jens-Peter W. Bergen, Kennebunk, for appellant Toralf H. Strand

Paul S. Bulger, Esq. (orally), Jewell & Bulger, P.A., Portland, for appellee Sabrina Velandry

York District Court docket number RE-2018-1
FOR CLERK REFERENCE ONLY